UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

AUG 2 4 2009

Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RHONDA FLEMING,
    Plaintiff,

v.                                                                                            CIVIL COMPLAINT NO. _____

THE GEO GROUP, INC.,
UNITED STATES MARSHAL SERVICE,
UNITED STATES OF AMERICA,
WARDEN CHRISTOPHER STRICKLAND, in his official and individual capacity,
MAJOR DURHAM, in his official and individual capacity,
CYNDEE OATES, DUSMS, in her official and individual capacity,
DR. CABELLERO, in her official and individual capacity,
MYRA WOMACK, in her official and individual capacity,
PHARMACY TECH BROWN, in her official and individual capacity,
KEEFE COMMISSARY NETWORK SALES,
COMMISSARY MANAGER VILLAREAL, in official capacity only,
ARAMARK CORPORATION,
    Defendants.

## CIVIL RIGHTS COMPLAINT UNDER *BIVENS*, FEDERAL TORTS CLAIMS ACT, SECTION 1983 AND ALL OTHER APPLICABLE STATE AND FEDERAL LAWS

TO THE HONORABLE JUDGE OF SAID COURT:

    COMES NOW, Rhonda Fleming, Plaintiff, pro se files this civil rights complaint under **Bivens v. Six Unknown Federal Narcotic Agents**, 91 S.Ct 1999 (1971), Federal Torts Claims Act, 28 U.S.C.A, Section 1346 (b) (1), American Disabilities Act, 42 U.S.C., Section 1983, medical malpractice, Section 2680(h) intentional tort and all other applicable state and federal laws, as well as any recognized legal theories, in which the Plaintiff may obtain relief. In support, the Plaintiff presents the following:

## JURSIDICTION AND VENUE

The Plaintiff is a mentally disabled, female detainee, in the custody of the United States Marshall's Service (USMS). The GEO Group, Inc. (GEO) has a contract with the USMS to maintain the custody and care of the Plaintiff. The Plaintiff is at the Joe Corley Detention Facility in Conroe, Texas, since October 24, 2008.

The Joe Corley Detention Facility (JCDF) is a federal agency, as the federal government has control over the jail's incarceration of federal prisoners pursuant to contract. Courts has previously determined that the presence of federal control is the determining factor regarding whether an entity is a federal agency for the purpose of establishing jurisdiction under 28 U.S.C. § 1361. **Nguyen v. United States Catholic Conference**, 548 F.Supp. 1333, 1338-39 (W.D.Pa.1982). Accordingly, jurisdiction is proper pursuant to 28 U.S.C. § 1361.

Alternatively, jurisdiction is also proper pursuant to **28 U.S.C. § 1331**, federal question jurisdiction. Federal question jurisdiction exists where an issue of federal law "appears upon the face of the complaint." **DiFelice v. Aetna U.S. Healthcare**, 346 F.3d 442, 445-46 (3d Cir.2003). The Plaintiff is raising numerous constitutional issues regarding her rights as a federal detainee.

## VIOLATIONS OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS
## FEDERAL LAW VIOLATIONS
## STATE LAW VIOLATIONS

### A. Denial of Religious Freedom

The plaintiff has been in the custody of the USMS since December 18, 2007, as a pre-trial detainee. USMS enters into contracts with local jails and private prisons to maintain custody of the Plaintiff and other federal prisoners. Presently, the Plaintiff is in the custody of the GEO Group, Inc. The USMS entered into a contract with GEO, with no provisions to provide the Plaintiff with reasonable opportunity as a Christian to exercise her religious freedoms as guaranteed by the First and Fourteenth Amendment.

The Plaintiff was arrested in Dallas, and the USMS had the Plaintiff in a jail, during Christmas, with no religious services or opportunity to exercise her faith.

The USMS has violated the Plaintiff's rights as a Christian by entering into contracts with facilities, which do not provide religious services to prisoners or detainees. This is a recognized constitutional right and the USMS has displayed deliberate indifference to the needs and rights of the Plaintiff's religious freedoms. The USMS violated the Plaintiff's constitutional rights.

GEO and Warden Strickland, a private corporation, in contract with a federal agency, have knowingly violated the Plaintiff's rights to religious freedom. The Plaintiff and other detainees' have been held almost a year at the facility without one church service. The Plaintiff has not received communion in almost a year. The Defendants have an ongoing policy of not providing any religious services, violating the Plaintiff's First Amendment rights. The Plaintiff has a religious obligation to attend services on Sunday and receive communion, the Body and Blood of Jesus Christ.

No religious literature is provided. The plaintiff has been denied her right to reasonable opportunity to her exercise of religious, by GEO, Warden Strickland and USMS and Cyndee Oates and the representatives of the USMS with GEO who entered into these contracts. All Defendants knew of, disregarded the right to religious services, and did nothing to make sure it was available before housing detainees. Defendants USMS, Oates, GEO, Strickland, and Durham were aware religious services would be unavailable to detainees when they opened the facility. The building was built with no chapel or education area to have services.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief. The USMS as a government agency should be ordered not to enter into contracts with private prisons or jails, which do not offer detainees reasonable opportunities to exercise her religious freedom.

GEO should be ordered to hire a fulltime chaplain. They are a private, for- profit corporation and this is one of the costs of doing business. A volunteer of one faith is not sufficient, and is not responsible for ensuring the rights of religious freedom to 1,000 prisoners.

GEO should be ordered to provide an area for religious services where inclement weather conditions will not deny the Plaintiff and other detainees' religious services.

**B. Unjust enrichment fraud against Plaintiff and other detainees by Keefe Co. and GEO.**

The state and federal laws, state correctional facilities must use the profits from prisoner commissary purchase to benefit the prisoners. The profits cannot be used to pay the bill of GEO.

First, Defendants GEO, Warden Strickland, Oates and USMS are aware that the commissary prices are 60% or higher than any state or federal prison commissary. The prison food given is unhealthy, poor quality and served in very small portions, which forces detainees to purchase food from commissary. The Plaintiff spent $2500 in 7 months to feed herself, an amount, which would have lasted 3 years in a state or federal facility.

A ramen noodle soup sold for 30 cents in state or federal facilities was sold for 86 cents to the Plaintiff. A small bag of chips is sold for 96 cents when a family size bag of the same brand is sold for $1 elsewhere.

Then the Defendants decided to get very greedy. First, they sold boxes of little Debbie type snacks in a box for $2.50—which was about $1.20 higher than sold elsewhere. Then, the Defendants started selling the snacks individually at 40 cents per cake/snack, taking the price of one box of oatmeal cakes to $4.80. Defendants Keefe, GEO, and Strickland are involved in an unjust enrichment fraud upon detainees and their families, who send money for their care. The Plaintiff paid taxes on these purchases and is considered a consumer protected under the Deceptive Trade Practices Act of the state and federal government.

Defendants USMS and Oates received numerous letters about the commissary prices because the food is so poor at the facility; detainees were starving unless they were able to purchase food. These Defendants placed the Plaintiff in the care of GEO, therefore are liable for the Plaintiff's losses.

The Plaintiff meets the amount-in controversy requirement to bring this claim against Keefe. The Plaintiff spent at least $1,000 more than she should have for items purchased. **(See, Judiciary Act 1789, 1 Stat. 73, 78.)** The Plaintiff and other detainees, past and present are united to enforce a single title or right in which they have a common and undivided interests—that Keefe and GEO refund 60% of the monies charged and the profits should be held in an account for the sole benefit of present and future detainees of JCDF.

When Defendants Keefe, Strickland, Oates and GEO were asked about how the profits were being spent on detainees, the Plaintiff received a grievance response stating the facility purchased some handballs for the recreation area.

The commissary grosses about **$100,000 per month or more.** GEO did not let the Keefe Co. come in free. GEO is receiving 25-30% of the profits.

Under the Freedom of Information Act, the Plaintiff and other detainees have requested records to account for the profits, which should be spent, on detainees for books, newspapers or exercise equipment, and Strickland refused to provide it.

Using the profits for the benefits of it—GEO, has civil and criminal penalties attached to it under state and federal laws.

The Plaintiff request declaratory, injunctive, punitive and compensatory damages. Specifically, the Plaintiff requests the Court order GEO and Keefe to provide it with records showing the gross and net profits of sales to detainees at the facility. GEO should be ordered to explain how $300,000 or more has been spent to benefit the Plaintiff and other detainees. The Plaintiff requests the imposition of a constructive trust on GEO and Keefe.

The Plaintiff requests that a constructive trust be placed over fifty percent of gross income Defendant Keefe has made from the period of August 2008 through the present, as well as any incoming sales made to detainees at Joe Corley Detention Facility (JCDF).

The imposition of a constructive trust is generally governed by state law. **Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1118 (5th Cir.1995).** Under Texas law, a constructive trust is an equitable remedy that the courts may impose when "the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." **Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (1960).** Imposition of a constructive trust is appropriate when the claimant establishes that (1) the debtor has committed actual fraud or has committed constructive fraud through the breach of a preexisting fiduciary or confidential relationship, (2) the debtor would be unjustly enriched by retaining the proceeds of the wrong, and (3) there is a traceable res upon which to impress the trust. **See, Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12 F.3d 426, 437 (5th Cir.1994) (applying Texas law); see also, Meadows v. Bierschwale, 516 S.W.2d 125, 128-29 (Tex.1974); In re Monnig's Dep't Stores, Inc., 929 F.2d 197, 201 (5th Cir.1991) (citing >Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158, 160 (1943)).**

Defendant Keefe, with the assistance of Defendants GEO, Strickland and Oates, are committing actual and constructive fraud upon the Plaintiff, through in unjust enrichment scheme of price gouging, in the sale of commissary food and other items. The Defendants are being unjustly enriched by the retaining the proceeds of wrongdoing and tracing these funds to impress the funds are possible by the appointment of a receiver by the Court.

This fraudulent activity of price gouging of the Plaintiff, her family, JCDF detainees and their families is ongoing. The Plaintiff's Complaint supports the request for the constructive trust.

## C. Inadequate Mental Health Care

The Plaintiff was transferred to JCDF on October 24, 2008, from Federal Medical Center-Carswell (Carswell), where she had just received treatment for a major depressive episode. The Plaintiff has been diagnosed with Bipolar I Disorder, Post Traumatic Stress Disorder, and Severe Anxiety. Carswell, a federal hospital and mental health facility for prisoners, transferred the Plaintiff with a 30-day supply of her medications, Tegretol and Effexor XR. A complete summary of the Plaintiff's mental health status and necessity of the medications were attached.

On October 25, 2008, without seeing a physician, the Plaintiff was denied her medications from Carswell. The Plaintiff went through severe withdrawals and was violently ill. She experienced cramping of her muscles, nausea, constant ringing in her brain, blurred vision, as well as a serious change in perception and mood. The Plaintiff also suffered neuropsychiatric injuries.

November 3, 2008, U.S. District Judge Miller, issued a court order that the Plaintiff be given the same medications she received at Carswell. This Order was given to GEO, USMS, Oates, Strickland and Womack, the Health Services Administrator for GEO. The Plaintiff was prescribed 200mg of Tegretol, twice a day, in 12-hour intervals and Effexor XR, 150mg, once a day, in the morning.

The medication was never administered as prescribed. Some days, the medication was given at 3:00am in the morning and the second dosage at 10:00pm or later. At other times, Defendant Brown gave the wrong medication or no medication at all. This occurred from November 2008 to January 2009, when the Plaintiff contacted Judge Miller, who ordered a Show Cause hearing on the matter.

In the hearing, Defendants GEO, USMS, Strickland, Oates and Womack admitted to one occasion of not providing the Plaintiff medication. The Plaintiff stated to the Court, medications were being signed out as if they were delivered, but in fact were not delivered. Defendant Womack testified this was not true and it is a violation of state law to sign out medicine before it is actually administered.

This is true and that is exactly what was happening in January 2009 to the present. All Defendants were made aware of this non-delivery of medication, but no changes were made. The Plaintiff, other detainees and even staff members of the facility started to report failure of some of the pharmacy techs to deliver the medication.

Several times, Brown gave Officer Ferguson medication to deliver to the Plaintiff—in clear violation of the state licensing laws. Other pharmacy techs gave medication to the transportation officers to administer to the Plaintiff. On all occasions, Officers Williams, Johnson and Roland refused to

administer these medications and the Plaintiff had to go to court without her medication, during her trial.

During the Plaintiff's trial, she would not get back to her cell until 8:30pm and medication usually was not given until 10:00pm or sometimes later. The next day, or morning, if the medication was administered, it was given at 3:00am in the morning. This was less than six hours after the previous dosage, when properly administering the medication would be in twelve-hour intervals. This went on from March 23, 2009 to April 27, 2009.

The Defendants, USMS, GEO, Womack, Strickland and Oates all had knowledge the Plaintiff had a serious mental illness and had just had a major depressive episode, with suicidal ideation, yet from November 2008 to May 2009, the Plaintiff **never** was examined by a psychiatrist or psychologist. This denial of adequate treatment in combination with the improper administering of the Plaintiff's medication lead her to continue to suffer with suicidal thoughts, hives, mania and major depression. Physically, the Plaintiff was lethargic at times, while other days she had racing thoughts and overall sense of being ill.

Because the Plaintiff was on Tegretol, the level of the medication was suppose to be checked every two weeks to protect the Plaintiff from liver damage and to ensure the proper Tegretol levels were being maintained for the medication to actually help the Plaintiff. No blood test were ever offered or done from November 2008 to the present. After the Plaintiffs started filing grievances, a test was offered.

On July 2, 2009, for the first time, the plaintiff was seen by Defendant Caballero, MD. Caballero was on a screen, not in person. The first question asked by Caballero was, "How many times have you tried to kill yourself?" Caballero was rude and completely uncaring. Caballero discontinued all medications.

The Plaintiff spoke with Durham and the grievance coordinator, about the cancellation of her medications. Caballero told the Plaintiff that no one should be on Effexor XR for a year. The medication is the type that must be tapered off, or the patient will suffer severe withdrawals, as the Plaintiff experienced in October 2008, when the Defendants initially discontinued the medication. All Defendants were contacted about the discontinuing of the medication on July 2, 2009. The Defendant was ignored, again, and suffered through weeks and weeks of unending physical pain and emotional trauma.

Forty days later, August 13, 2009, Caballero decided to prescribe Effexor XR to the Plaintiff again, without any examination or reason for re-prescribing the medication. Pharmacy Tech Furr just showed up and said the Effexor XR was now available to the Plaintiff.

The Plaintiff went through at least four weeks of pure hell, withdrawals from psychotropic medications, which the Defendants took and gave at will, so at this point, she refused all medical care, for her own physical safety. The Plaintiff acknowledges she needs mental health care, but the Defendants have unnecessarily caused too much physical and mental pain, to be trusted to administer any more medications. Any time they decided to take the medications, they do, without justification and with no concern for the welfare of the Plaintiff or other detainees.

All involved Defendants, subjected the Plaintiff to cruel and unusual punishment, displayed deliberate indifference to the Plaintiff's recognized mental illness, were negligent and acted with an attitude nothing could be done because their actions are approved by the federal government. The Defendants violated the Plaintiff's Eighth and Fourteenth Amendment rights, repeatedly, while under a federal court order, no less.

GEO, specifically, has a policy of ignoring the medical and mental health needs of detainees by depriving them of their medications upon arrival at JCDF. Again, all Defendants named in this section were aware the Plaintiff had a serious mental illness. A note detailing the medications the Plaintiff is supposed to take was placed on her cell door, November 2008 and remains there today. The Defendants had been put on notice with medical records from Carswell, a federal judge court order, and later a show cause hearing, which included a warning from Judge Miller. Judge Miller made it clear he was giving the Defendants the benefit of the doubt, but he did not want to hear about failures to follow the order again.

The actions of all Defendants violated the constitutional rights of the Plaintiff and were non-discretionary acts. "The United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims, the occurrence of such a violation would involve the performance of a non-discretionary function for jurisdictional purposes, if the constitutional tort is also cognizable as an intentional tort under state law. As a federal district court explained:

*[A] court must determine whether there is a specific and intelligible constitutional mandate that involves or is related to the alleged intentional torts of the accused officer(s). If such a mandate exists, the Court will conclude, for jurisdictional purposes only, that the alleged torts occurred during the performance of*

*a non-discretionary function. Upon reaching such a conclusion, the Court may determine the merits of the > section 2680(h) intentional tort claims under the applicable state tort law.*

**2009 WL 416983, Castro v. U.S., (C.A.5 (Tex.) 2009)**

Under the **American Disabilities Act**, the Defendants failed to reasonably accommodate the Plaintiff's disability, disregarding her mental illness. If the Plaintiff had diabetes, chronic care treatment would have been given. The Plaintiff's mental illness requires the same chronic care as a heart patient or diabetic. Bipolar disorder is a chronic mental illness, with no cure. It is a physical and mental illness, because it stems from a neurological disorder of the brain. The Plaintiff was discriminated against by the Defendants from November 2008 to the present due to their failure to provide chronic mental health care to the Plaintiff.

The Plaintiff requests injunctive, declaratory, compensatory, punitive, nominal and any other relief, which may apply.

**D. Due Process Violation/Denial of Meaningful Access to Courts/Retaliation Claim**

The following are the events that have lead the Plaintiff to seek relief from the Court. The events occurred from November 5, 2008 through July 23, 2009.

1. The Plaintiff has been held in F-Cellblock, which has 5 individual cells, a hallway of about 30 feet long and a dayroom area with a television and microwave oven.

2. The Plaintiff was placed in this particular housing by a specific request from Cyndee Oates, DUSM, with USMS. The Plaintiff invoked her right to self-representation in her criminal case. Because the case involved numerous financial records and medical documents, the decision was made to place the Plaintiff in a single cell versus a dormitory on B-Cellblock. The records and documents contain the names, addresses, dates of birth, social security numbers and other personal information of parties

involved in the cause. B-Cellblock has no lockers to secure the 5 boxes of documents sent to the Plaintiff by standby counsel. F-Cellblock cells have locks on each door, therefore the documents and any personal legal materials were secure.

3. The Plaintiff was classified as a general population detainee, with the same rights and privileges as detainees on B-Cellblock. The Plaintiff had access to recreation and law library with general population female detainees. The Plaintiff had dayroom and shower access from 6:00am—11:00pm. Leisure library and when religious services were organized, the Plaintiff had access to attend with general population. In short, although the Plaintiff was housed in another cellblock, her rights and privileges were no different from any other detainee. The Plaintiff's door was never locked unless she left the cellblock.

4. From November 5, 2008 through July 23, 2009, the Plaintiff's housing was not an issue.

5. On July 22, 2009, the Plaintiff filed a grievance stating the Defendants failed to administer and monitor the Plaintiff's court ordered medication as prescribed by the treating psychiatrist, and because of this failure, the Defendant was denied a fair trial. This grievance was filed after writing District Court Judge Miller regarding the problems. Judge Miller responded, in January 2009, with a Show Cause hearing. The Defendants were again instructed to give the Plaintiff her medication, but continued to defy the court order.

6. On July 23, 2009, Warden Christopher Strickland and Major Durham had the Plaintiff brought to the Major's office. Major Durham stated, the USMS instructed him to tell the Plaintiff the facility no longer had to house the Plaintiff in F-Cellblock, and she could be moved to B-Cellblock. Major Durham further stated the GEO and the USMS agreed the Plaintiff no longer needed the documents and records in her possession. The Defendants agreed the Plaintiff's legal materials could be left in Major Durham's office. If later the Plaintiff needed a document, she could contact the Major to receive access to the legal materials.

7. The Plaintiff explained to the Defendants that she used her legal materials as her legal research leads her to need them. The Plaintiff told the Defendants the USMS and GEO had no legal right to separate the Plaintiff from her legal materials or the right to decide what the Plaintiff needed in those records to defend her case.

8. The Defendants laughed and stated, the USMS said if the Plaintiff wanted to keep the documents and records in the Plaintiff's possession, fine, but from this moment on, the Plaintiff would still be housed in F-Cellblock, in her same cell, but she would be under the same treatment as a disciplinary segregation detainee.

9. Disciplinary segregation detainees have no contact with general population detainees. Most are dangerous to other detainees as well as staff. These detainees are kept in their cells Monday-Friday, 23 hours a day and on Saturday-Sunday, 24 hours a day. They are handcuffed whenever they are removed from their cells. Recreation is given to them for one hour, without contact with other detainees. Law library access is limited and there are no other privileges for them.

10. On July 23, 2009, to the present, it is under these conditions the Plaintiff is currently held by the Defendants. The Plaintiff has no disciplinary action against her and was afforded no due process before this punitive action was taken.

The Plaintiff has a clear and undisputable right to the relief requested, which will compel a clear nondiscretionary duty upon the Defendants.

First, the Plaintiff has a legal right to access to her legal materials and meaningful access to the courts. The Plaintiff has criminal and civil ongoing litigation. Motion is both causes are filed weekly. The Plaintiff has no attorney, therefore she is her sole defense in these causes. It is the constitutional right of all Americans to utilize self-representation should they so choose. The Defendants should not penalize detainees for using this right.

The issue at hand, involves the USMS and GEO unlawfully denying the Plaintiff meaningful access to courts by arbitrarily separating the Plaintiff from her legal materials without a legitimate penological purpose. Second, the Defendants conspired to take punitive action, without due process, against the Plaintiff if she did not voluntarily agree to deny herself access to her legal materials.

The Plaintiff has a legal right to ready access to her legal materials. The Defendants are administrators of a detention facility and a U.S. Marshall. What is the likelihood of the Plaintiff having access to her legal materials on weekends for example? In addition, what legitimate purpose do the Defendants have for their decision against the Plaintiff?

The Court should know, the Government when prosecuting their case, had over 35 boxes of documents, while the Plaintiff's meager legal materials are 5 boxes. (Office Depot file boxes, not large.)

In **Mitchell v. U.S.,** 419 F.Supp.2d 709 (W.D. Pa. 2005), the District Court gives as good an explanation for the Plaintiff's ready access to her legal materials as can be given, quoting **Rich v. Zitnay**, 644 F.2d 41, 43 (1st Cir. 1981):

*It has been said that:*

*[l]egal research often requires browsing through various materials in search of inspiration; tentative theories may have to be abandoned in the course of research in the face of unfamiliar adverse precedent. New theories may occur as a result of a chance discovery of an obscure or forgotten case. Certainly a prisoner, unversed in the law and the methods of legal research, will need more time or more assistance than the trained lawyers in exploring his case. It is unrealistic to expect a prisoner to know in advance exactly what materials he needs to consult.*

***Williams v. Leeke**, 584 F.2d 1336, 1339 (4th Cir.1978).*

**Mitchell** goes on to state for itself, "This Court notes that it has consulted volumes of treatises and statutes totaling in the hundreds of pages in the course of addressing this Petition. In light of the availability of these materials, this Court has printed and copied a few hundred pages from various cases when addressing the Petition sub judice." Id. At 714.

The Plaintiff has not even 1% of the ability of the jurist in the **Mitchell** decision. Therefore, it is understood by courts pro se litigants require meaningful access to law libraries and their legal materials.

Having shown the Court the absurdity of the Defendants unlawful, meddling and interference in the Plaintiff's access to courts, clearly the decision to take punitive action against the Plaintiff should be under suspicion. On one hand, the Defendants seek to deny access to the Plaintiff's legal materials or in the alternative, violate her rights to due process and equal protection under the Eighth and Fourteenth Amendments of the U.S. Constitution.

The Plaintiff is not the first detainee, in which the Defendants, have deprived due process. A detainee named Martha Tovar was housed in F-Cellblock from November 2008 through March 2009, under disciplinary segregation conditions, without ever going before a disciplinary officer. Therefore, the conduct of the Defendants is not isolated.

The Defendants can show no valid, rational connection between their decision and legitimate penological interest put forth to justify it. Pretrial detainees "are not to be subjected to any hardship

except those absolutely requisite for the purpose of confinement only". **563 F.2d 741, Miller v. Carson, (C.A.5 (Fla.) 1977**). The Plaintiff is not sentenced and her finding of guilt before a jury is not final.

The Court, in **Miller**, further held, " In an earlier case we reserved the question whether the Constitution and 42 U.S.C. s 1983 require that pretrial detainees be allowed opportunities for outdoor exercise and recreation. **Smith v. Sullivan, 5 Cir. 1977, 553 F.2d 373, 379.** In the case now before us, we face that question and the question whether the Constitution and Section 1983 mandate such opportunities for convicted prisoners. We hold that both presumably innocent inmates and convicted inmates must be "allowed reasonable recreational facilities". Pretrial detainees are entitled to such facilities because of the due process clause of the fourteenth amendment."

The Defendants actions are in retaliation against the Plaintiff for bringing their gross negligence and deliberate indifference of the Plaintiff's mental health care to the attention of Judge Miller's court.

The present treatment of the Plaintiff is constitutionally unreasonable. The Plaintiff suffers with motor restlessness and is forced to pace to relieve this problem. The medical department and security staff are all aware of this problem. There are cameras in F-Cellblock, which will show the Plaintiff routinely pacing. The unit psychologist noted in the Plaintiff's medical records, the best place to house the Plaintiff was in F-Cellblock , where she could relieve her motor restlessness, without disturbing other detainees, when necessary. For this reason, during the relevant period, the Plaintiff's cell door was never locked.

Today, the Plaintiff is locked in as previously described. To confine the Plaintiff under these conditions for 23 or 24 hours a day in a small cell, with no windows or contact with other detainees is cruel.

Defendants USMS, Oates and the United States denied the Plaintiff meaningful access to courts and a full and fair trial by housing the Plaintiff at JCDF during her five weeklong trial.

For five weeks, the Plaintiff was awakened at 2:00am. The Plaintiff was taken out of her housing cell and placed in holding cell by 2:30am, where she just sat waiting with other detainees until 4:00am, when she was shackled in preparation to be transported to the court. The Plaintiff was not transported back to the facility until 6:15pm. It is an one and a half hour drive from downtown Houston, to Conroe in rush hour traffic. The Plaintiff did not arrive at the facility until 8:00pm or later. The Plaintiff would arrive at her housing cell by 9:00pm and then have to wait until 10:00pm or later for her medication.

Considering the above schedule, along with the denial of adequate mental health care, nutritionally inadequate food and four hours or less of sleep, it could not be said the Plaintiff had

meaningful access to court or a fair trial. The Plaintiff requested a transfer to the Federal Detention Center before and during her trial. The Defendants refused to grant the request, while being aware of the harsh circumstances placed upon the Plaintiff during trial. The Defendant made a request for transfer to the trial court and was denied. The Plaintiff invoked her right to self-representation and punitive actions was taken by the Defendants by their deliberate indifference to the Plaintiff's right to a fair trial and meaningful access to courts.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

### E. Food

The food is served cold, it is nutritionally inadequate and it is the same food every day. It is served on trays, which are supposed to keep the food hot or cold. By the time it is taken from the kitchen to the Plaintiff's cell, it is cold. The officers take off the tops covering the food. The tray is taken off the cart, put on the dirty floor so the officer can unlock a door to the cells, and then it is given to the Plaintiff. There are cameras in the Plaintiff's housing area to prove these statements.

Fresh vegetables and fruits are rarely served. No fresh meat or fish is ever served to the Plaintiff. Milk is served once a week. Mainly the menu consists of beans and rice, repeatedly. No diet that does not include milk, fresh vegetables and fruit, daily, can be nutritionally adequate. It should also be stated the portions served are too small to elevate hunger.

Prison officials must ensure "inmates receive the basic necessities of [nutritionally] adequate food ...." **Barney, 143 F.3d at 1310 (citing, Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); see also, Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir.2002).** "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment," **Thompson, 289 F.3d at 1222,** where the prison officials demonstrated "deliberate indifference," **Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). See also, Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).** The Defendants have been contacted repeatedly, disregarding the Plaintiff and other detainees request for better food.

The failure of the Defendants, Aramark, GEO and Strickland to provide nutritionally adequate meals for almost a year, will have serious long-term effects on the Plaintiff's health. The Defendant has already suffered constipation, skin and nail ailments and other illnesses, due to a lack of nutritional food. The Defendants actions are a breach of professional standards of health care and is actionable under Texas law. The Plaintiff makes a claim of non-care negligence to her health. Aramark is a company

with over 170,000 workers and is aware the company has failed to properly feed the Plaintiff and other detainees at JCDF.

The Plaintiff is requesting injunctive relief that the Defendants be ordered to hire a licensed dietician, who will work with the medical department to ensure nutritional meals are served.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

### H. Hygiene Items and Facility Sanitation

There is a regular denial of toilet paper by the staff to detainees. Toilet tissue if issued twice a week and if a detainee runs out, they are refused more toilet paper. Defendants GEO, Strickland and Durham have been contacted about the denial of a necessity and have set no policy in place to stop staff from denying the Plaintiff and other detainees' toilet paper.

The Plaintiff is denied the opportunity to adequately comb and brush her hair since arriving at the facility. A hair comb, about 4 inches long, with very small teeth, cannot be used on the Plaintiff's hair, without hair breakage and extreme pain.

The Plaintiff is African-American and her hair was about 12 inches long, and was in good condition, as her medical records will show. The Plaintiff was under the care of a psychiatrist and is prescribed medication that can sometimes lead to hair loss. Therefore, it is noted in the Plaintiff files her was in good condition, with no hair loss, before being transferred to JCDF.

It is widely known by all in correctional facilities, African-Americans, Hispanics, and even some Caucasians require what is call a wide-tooth comb and it is provided at all state and federal prison facilities. Being able to comb one's hair is a recognized constitutional right, the same as being able to brush their teeth.

The Plaintiff also requested that hair relaxer be sold on commissary to make it easier to comb her hair. This product is sold at all state and federal prison facilities.

The Defendants denied the Plaintiff access to a comb, brush and hair relaxer, and because she is denied these hygiene items, she has suffered severe hair loss and physical pain.

The Plaintiff had a constitutional right to proper hygiene while in the custody of GEO, and the Defendants ignored the Plaintiff's repeated requests for a recognized right and need.

The Defendants provided a barbershop for the male inmates, but the females have no access to have a haircut. The Plaintiff suffered sexual discrimination in being denied access to the barbershop by Defendants GEO, Strickland and Durham.

The issues of sanitation are worst. The bedding and assigned sleeping areas are not being sanitized as detainees are released and new detainees come in. Not long after arriving, the Plaintiff contracted ringworm and still has scarring from this disease.

Food slots are left filthy. Officers serve detainees in their cells and food from the trays are left on these food slots for months on end.

At the beginning of the swine flu epidemic, the Defendants would not let Mexican citizens visit, but continued to jeopardize the Plaintiff's health, bringing in illegals, which were caught at the border. All of the staff were given mask to protect themselves. The Plaintiff and other detainees requested mask and were denied this protection.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

### G. The JCDF Facility is structurally unsafe.

Whenever it rains moderately the building loses power. Sometimes the generator works, sometimes it does not.

The Plaintiff is in a cell with no windows. In July 2009, the facility lost power and stayed without power for two and one-half hours. There were no emergency lights, the PA system did not work. The air conditioning went out. No officers entered any cells to let detainees know what was happening. This was very frightening for the Plaintiff, who had no idea if the building was burning or it had been bombed. In essence, the Plaintiff was left in a terrifying situation—locked in total darkness.

This same situation happened again August 10, 2009. The facility was able to get the lights to stay on, but no air conditioning on a facility with no windows in Texas summer heat. Within two hours, the Plaintiff's cell floor was covered with water and it stayed that way until the next day. On another occasion, half of the building was without lights for several days. All of these building structural deficiency sees have been reported on the news, specifically on Channel 13, after Defendant R. Allen Stanford complained of being in a cell with no air and water all over the floor.

If a hurricane or any other serious weather condition were to occur, the Plaintiff's safety will be in grave danger.

It should be further stated that in the event of the Central American and Mexican gangs rioting the Plaintiff is not safe as a female detainee, from rape or any type of assault. This is a coed facility and the windows can easily be broken by any determined violent male detainee.

This building was built one year ago, and the foundation and walls are full of 14-foot long cracks, which go from the ceiling to the floor. It is not structurally sound and in the case of a hurricane or any other type of severe weather, the Plaintiff is not safe.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

## H. Recreation

Prisoners are supposed to be afforded recreation. GEO has an open area with one or two handballs. No other exercise equipment has been provided. Because GEO has misappropriated the profits from commissary, the Plaintiff has been denied adequate in cell and out of cell recreation.

GEO routinely makes requests to Christian and other organizations asking them to donate books to prisoners. If this was a state or federal facility, this would be acceptable. GEO misleads these organizations into donating, when GEO is a for profit corporation, and should not be soliciting Christian organizations for recreation items they have a duty to provide, with profits from commissary.

Currently, the facility library receives two newspapers per day to be shared by 1,000 detainees. Segregation detainees have no access to these newspapers. No magazines are received. All books, mainly old books are donated.

The Plaintiff raises this issue in connection with Violation—B, because it is a fraud and deception on the taxpaying public who are unaware they are sending donations to a private corporation.

This is egregious considering GEO and Strickland, do not have to pay for recreation items. The profits from commissary should be used, as dictated by federal and state laws.

GEO should be ordered to spend the profits appropriately on exercise equipment, books, education classes, magazines and religious literature for all detainees.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief. The same federal statutes that regulate how the Bureau of Prisons spends commissary profits, governs these monies at JCDF. The Plaintiff and all other detainees are under the custody of the federal government.

## I. Sexual Discrimination and Pay

The Plaintiff is housed in a cellblock area where female detainees are sometimes placed for disciplinary infractions. From November 2008 to the present, the Plaintiff has had to clean the showers, dayroom and cells of other detainees, without pay. Plaintiff is not requesting pay for cleaning her own cell or cleaning after herself anywhere else in the housing area. As stated earlier in this Complaint,

when detainees are released from the cells, no one cleans the cells. Food and other debris humans leave behind will remain in these cells unless the Plaintiff cleans. In addition, when detainees are in segregation for disciplinary infractions, they are not allowed to clean after themselves when they use the showers or dayrooms. For months, the maintain her health and sanity, the Plaintiff had to clean, without pay.

Male detainees are paid for cleaning. It is not much, but the Plaintiff should receive the same pay male detainees received for similar work. Instead, Defendants GEO and Strickland have sexually discriminated against the Plaintiff. In fact, numerous male detainees work, while no females have jobs and the opportunity to earn pay.

"[U]nless some specific kind of outlawed discrimination is shown the state has the right to make reasonable rules as to whether or not it will pay prisoners and under what circumstances prisoners will be paid." **Wendt v. Lynaugh, 841 F.2d 619, 621 (5th Cir.1988).** The Plaintiff states she is being discriminated against as a female and it is outlawed and a violation of equal protection to work without pay, when males are paid.

## PRAYER FOR RELIEF

The Plaintiff requests all relief she is due under the United States Constitution, federal and state laws and any applicable legal theories.

## STATEMENT OF VERIFICATION OF THE COMPLAINT

The Plaintiff verifies that all statements made in this Complaint are true and correct to the best of her knowledge, under the penalty of perjury, and should be construed as an affidavit to the facts by the Plaintiff.

Respectfully Submitted

Rhonda Fleming, Plaintiff, pro se
August 21, 2009
#20446-009
500 Hilbig
Conroe, TX 77301

**CERTIFICATE OF SERVICE**

A copy of the same has been forwarded to all Defendants listed in this Complaint, by United States Mail, while in the custody of Defendants GEO and Strickland, August 21, 2009, by United States Mail.

Warden Christopher Strickland
500 Hilbig
Conroe, TX 77301

The GEO Group, Inc.
621 NW 53rd Street
Boca Raton, FL 33487

Aramark, Inc.
Attn: Food Service Manager-JCDF
500 Hilbig
Conroe, TX 77301

United States of America
United States Attorney's Office
P.O. Box 61129
Houston, TX 77208
Keefe Commissary Network Sales
P.O. Box 17490
St. Louis, MO 63178-7490

Myra Womack, Health Service Admin
500 Hilbig
Conroe, TX 77301

Cyndee Oates
500 Rusk Avenue
Houston, TX 77002

United States Marshall Services
500 Rusk Avenue
Houston, TX 77002

Major Durham
500 Hilbig
Conroe, TX 77301

Keefe Commissary Network Sales
Attn: Mr. Villareal, Commissary Mgr.
500 Hilbig
Conroe, TX 77301
Ms. Brown, Pharmacy Tech
500 Hilbig
Conroe, TX 77301

Dr. Caballero, MD—Psychiatrist
500 Hilbig
Conroe, TX 77301

Rhonda Fleming
20446-009
500 Hilbig
Conroe, TX 77301

United States District Court
Southern District of Texas
RECEIVED
AUG 24 2009
Clerk of Court

THIS MAIL IS CORRESPONDENCE
FROM A DETAINEE AT THE
JOE CORLEY DETENTION FACILITY

THIS LEGAL MAIL HAS
NOT BEEN INSPECTED

United States District Clerk
P.O. Box 61010
Houston, TX 77208